IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REAGAN NATIONAL ADVERTISING OF AUSTIN, INC., Plaintiff, | § § § § | |
| v. | § § | CIVIL ACTION NO. 1:17-CV-00673-RP |
| CITY OF AUSTIN, Defendant. | § § § | |

**TRIAL BRIEF OF PLAINTIFF AND INTERVENOR**

Pursuant to paragraph 4 of the Scheduling Order [Doc. 18], Plaintiff Reagan National Advertising of Austin, Inc. ("Reagan") and Intervenor Lamar Advantage Outdoor Company, L.P. ("Lamar") jointly file this trial brief.

**I.   SUMMARY**

1. The question in this case is whether the City of Austin's ("City") sign regulations are constitutional. Critical to this determination will be to decide whether those regulations are subject to strict scrutiny under *Reed v. Town of Gilbert, Arizona,* 135 S.Ct. 2218 (2015).

2. In 2015, the United States Supreme Court issued its opinion in *Reed v. Town of Gilbert, Arizona* and widely impacted laws regulating signs. It ruled that content-based regulations must be subject to strict scrutiny. The Supreme Court in *Reed* said plainly that the first step to determining whether a law is content based or content neutral is to determine whether it is content neutral on its face. If it is not content neutral on its face, then strict scrutiny applies regardless of the government's motives, justifications or lack of animus towards the regulated speech.

3. Since *Reed* was handed down, cities, including the City, have made efforts to rewrite their sign codes to address the issues raised by *Reed*. Also since that time, some courts

have attempted to limit the impact of *Reed* only to regulation of non-commercial speech. However, *Reed* does not limit itself to non-commercial speech. Further, the Justices who issued and concurred with the *Reed* opinion specifically anticipated the wide-spread impact that various courts now seek to limit.

4. Reagan and Lamar ask the Court to find that the City's regulations that were in effect at times relevant to this suit are subject to strict scrutiny based on *Reed*. The City's Sign Code, which is Chapter 25-10 of the City Code, treats "on-premise" signs and "off-premise" signs differently and defines them in such a way that requires one to read the sign to determine which kind of sign it is and what ordinances apply. If the sign must be read to determine what ordinances apply, the Sign Code, on its face, is not content neutral.

5. Reagan and Lamar ask the Court to reject those opinions that limit *Reed* and to apply *Reed* and strict scrutiny and to strike Chapter 25-10 of the City Code, in whole or in part, as an unconstitutional content-based regulation of speech.

## II.     PRIOR TO *REED*, ORDINANCES THAT DISTINGUISHED BETWEEN "ON-PREMISE" AND "OFF-PREMISE" SIGNS WERE SUBJECT TO INTERMEDIATE SCRUTINY.

6. Before *Reed*, the United States Supreme Court upheld ordinances that allowed signs that advertised goods or services available on the property where the sign was located but prohibited signs that advertised goods or services off-premises. *See e.g. Metromedia, Inc. v. City of San Diego*, 101 S.Ct. 2882, 2921 (1981) ("a city may constitutionally exercise its police power by eliminating offsite *commercial* billboards"). In reaching that conclusion, the Supreme Court said "the prohibition of offsite advertising is directly related to the stated objectives of traffic and esthetics." *Metromedia, Inc.*, 101 S.Ct. at 2894. And the Supreme Court noted that the Constitution offers less protection to commercial speech that to other constitutionally guaranteed

expression. *Metromedia, Inc.*, 101 S.Ct. at 2892 (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 100 S.Ct. 2343 (1980)).

7. Before *Reed*, the Fifth Circuit similarly permitted ordinances that allowed for on-premise commercial advertisement while banning off-premise commercial advertisement. *See RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 225 (5th Cir. 2009); *Paradigm Media Group v. City of Irving*, 65 Fed. Appx. 509, 2003 WL 1922999 (5th Cir. 2003)(finding that ordinance banning off-premise advertising satisfied intermediate scrutiny under *Central Hudson*).

### III. REED REQUIRES STRICT SCRUTINY.

8. The question before the Court is whether the opinion of the United States Supreme Court in *Reed v. Town of Gilbert, Arizona,* 135 S.Ct. 2218 (2015) altered the analysis required in reviewing ordinances that make a distinction between on-premise signs and off-premise signs. An analysis of *Reed* makes clear that *Reed* does change the landscape applicable to the on-premise/off-premise distinction and specifically requires strict scrutiny to apply where ordinances are not content-neutral.

#### A. *Reed* broadly says that strict scrutiny applies to content based restrictions.

9. The opinion of the United States Supreme Court in *Reed* consisted of (1) the opinion of the United States Supreme Court delivered by Justice Thomas, (2) a concurrence delivered by Justice Alito and joined by Justice Kennedy and Justice Sotomayor, (3) a concurrence in judgment delivered by Justice Breyer, and (4) a concurrence in judgment delivered by Justice Kagan and joined by Justice Ginsberg and Justice Breyer.

10. *Reed* says, in the opinion of the Court, plainly and without qualification:

> Government regulation of speech is content based if a law applies to a particular speech because of the topic discussed or the idea or message expressed. [citations

omitted] This common sense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.

*Reed*, 135 S.Ct. at 2227. *Reed* further says plainly and without qualification: "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus towards the idea contained' in the regulated speech." *Id*. at 2228. In stating this standard, the United States Supreme Court makes clear that "the crucial first step in the content-neutrality analysis" is "determining whether the law is content neutral on its face." *Id*.

11. In *Reed*, the Town of Gilbert argued against an "absolutist" content neutrality rule, fearing that it would render "'virtually all distinctions in sign laws…subject to strict scrutiny.'" *Reed*, 135 S.Ct. at 2232. In response, Justice Thomas wrote:

> Our decision today will not prevent governments from enacting effective sign laws…Not "all distinctions" are subject to strict scrutiny, only *content-based* ones are. Laws that are *content-neutral* are instead subject to lesser scrutiny.

*Id*. at 2232 (emphasis in the original). Justice Thomas went on to cite examples of regulations that have nothing to do with the content of the sign's message, including "size, building materials, lighting, moving parts, and portability." *Id*. It also referenced the acceptability, for example, of outright bans against signs on public property and said, "the Town may go a long way toward entirely forbidding the posting of signs, so long as it does so in an evenhanded, content-neutral manner." *Id*.

12. Justice Kagan's concurrence in judgment acknowledges the wide-spread impact the *Reed* opinion would have. Justice Kagan writes:

> Countless cities and towns across America have adopted ordinances regulating the posting of signs, while exempting certain categories of signs based on their subject matter. For example, some municipalities generally prohibit illuminated signs in residential neighborhoods, but lift that ban for signs that identify the

> address of a home or the name of its owner or occupant. [citation omitted] In other municipalities, safety signs such as "Blind Pedestrian Crossing" and "Hidden Driveway" can be posted without a permit, even as other permanent signs require one. [citation omitted] Elsewhere, historic sign markers—for example, "George Washington Slept Here"—are also exempt from general regulations. [citation omitted] And similarly, the federal Highway Beautification Act limits signs along interstate highways unless, for instance, they direct travelers to "scenic and historic attractions" or advertise for free coffee.

*Reed*, 135 S.Ct. at 2236. Having considered these various restrictions, Justice Kagan continued:

> Given the Court's analysis, many sign ordinances of that kind are now in jeopardy…Says the majority: When laws "single[] out specific subject matter," they are "facially content based"; and when they are facially content based, they are automatically subject to strict scrutiny."

*Id*. That is exactly what the Court said – with no qualifications.

13. Justice Alito wrote a concurrence in which he specifically mentioned on-premises and off-premises signs in a manner that some courts, as will be discussed below, have misconstrued. In discussing the power of municipalities to enact, Justice Alito wrote, "I will not attempt to provide anything like a comprehensive list, but here are some rules that would not be content based:…Rules distinguishing between on-premises and off-premises signs." *Reed*, 135 S.Ct. at 2233. That statement, which is made with no analysis, must be read in a manner consistent with the opinion of the Court, which Alito joined and to which Alito concurred. Ordinances that distinguish between on-premise and off-premise signs ultimately may not be content-based under *Reed*, but nothing in Justice Alito's concurrence indicates – or should be construed as indicating – that the *Reed* analysis to determine *whether* they are content-based does not apply to ordinances that distinguish between on-premise and off-premise signs.

14. One court in Tennessee articulated the issue of Justice's Alito's concurrence by saying:

> In his concurring opinion in Reed, Justice Alito described the off-premises/on-premises distinction as content neutral. [citation omitted] This Court agrees it is

possible for a restriction that distinguishes between off- and on-premises signs to be content neutral. For example, a regulation that defines an off-premise sign as any sign within 500 feet of a building is content neutral. But if the off-premises/on-premises distinction hinges on the content of the message, it is not a content neutral restriction. A contrary finding would read Justice Alito's concurrence as disagreeing with the majority in Reed. The Court declines such a reading. Justice Alito's exemplary list of "some rules that would not be content based" ought to be read in harmony with the majority's holding. [citation omitted] Read in harmony with the majority, Justice Alito's concurrence enumerates an "on-premises/off-premises" distinction that is not defined by the sign's content, but by the sign's physical location or other content neutral factor.

*Thomas v. Schroer,* 248 F.Supp.3d 868, 879 (W.D. Tenn. 2017).

15. In essence, the United States Supreme Court, by rejecting the argument against an "absolutist" content-neutrality rule, adopted an "absolutist" content neutrality rule: if a sign is not content neutral on its face, then strict scrutiny applies. In essence, if a person must "read" the sign to determine whether the sign complies, the regulation is *not* content neutral.

16. The United States Supreme Court did not put any qualifications on when *Reed* applies and did not limit *Reed* in any way based even on the specific signs that were at issue in that case. Further, the United States Supreme Court recognized, in the Court's opinion and in at least one concurrence, that the *Reed* opinion would have wide-spread impact on sign codes all across the country.

    **B.**    **Lower courts have attempted to limit the applicability of *Reed*.**

17. Despite the plain language of *Reed* and the wide-spread impacts anticipated by the United States Supreme Court, some courts have attempted to limit *Reed* by saying that it applies only to non-commercial speech. Opinions limiting *Reed* stem largely from California cases. Within weeks of *Reed* being decided, two federal courts in California decided not to apply *Reed* as broadly as *Reed* was articulated, and some other courts have followed suit. The California courts' limitation of *Reed* should be rejected here.

18. *Reed* was decided on June 18, 2015. The first two cases that limited *Reed* were *California Outdoor Equity Partners v. City of Corona*, CV 15-03172 MMM (AGRx), 2015 WL 4163346 (C.D. Cal. July 9, 2015) and *Citizens for Free Speech, LLC v. County of Alameda*, 114 F.Supp.3d 952 (N.D. Cal. 2015).

19. In the first of these cases, the California court considered whether an ordinance that banned commercial billboards without banning on-site commercial signs or non-commercial billboards was unconstitutional on its face. *California Outdoor Equity Partners*, 2015 WL 4163346 at *1. There, the California court applied *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 100 S.Ct. 2343 (1980) and said simply: "The Supreme Court's recent decision in *Reed*…does not alter this conclusion…*Reed* is most notable for what it is not about, and what it does not say." *California Outdoor Equity Partners*, 2015 WL 4163346 at *9 and *10. The California court went on to say, "*Reed* does not concern commercial speech, let alone bans on off-site billboards." *Id*. at *10.

20. In the second of the California cases, the court addressed a land use agreement applicable to a planned development district. *Citizens for Free Speech, LLC*, 114 F.Supp.3d at 958. The agreement called for a single sign on a particular parcel, and those who wanted additional signs challenged an ordinance banning billboards, which the court viewed as a regulation of solely commercial speech. *Id*. at 958 and 968. That court limited *Reed* as applicable to "distinct temporal or geographic restrictions." *Id*. at 969. "Plaintiffs have not identified any distinct temporal or geographic restrictions on different categories of permitted signs in [the applicable ordinance] based on those signs' content. Consequently, *Reed* does not apply here." *Id*. With no more analysis of the applicability of *Reed*, the California court applied the test in *Central Hudson. Id*.

21. A third and later California case attempted further to limit *Reed*. *See Lamar Central Outdoor, LLC v. City of Los Angeles*, 245 Cal. App. 4th 610 (2016), reh'g denied, (March 29, 2016). When a billboard company challenged certain billboard regulations imposed by the City of Los Angeles, a California Court of Appeals dismissed *Reed*, citing the two federal California cases discussed above and noting that "three of the justices joining the court's opinion in *Reed* expressed the view that on-site-off-site distinctions and distinctions between placement of signs on private and public property are not content based and do not require strict scrutiny." *Lamar Central Outdoor, LLC,* 245 Cal. App. 4th at 630-31. As discussed in paragraph 13 above, the California appellate court was mistaken in its interpretation of the concurring opinion to which it refers.[1]

22. The Ninth Circuit has similarly stated limitations on *Reed* in *Contest Promotions, LLC v. County of San Francisco*, 874 F.3d 597 (9th Cir. 2017) and *Lone Star Security and Video, Inc. v. City of Los Angeles*, 827 F.3d 1192 (9th Cir. 2016). A careful review of those opinions demonstrates that the Ninth Circuit did little, if any, analysis in limiting *Reed*.

23. In *Contest Promotions*, a county banned new billboards but allowed new on-site signs subject to various rules. *Contest Promotions, LLC*, 874 F.3d at 599. It also wholly exempted non-commercial signs from the rules at issue, and no one in the case disputed that the signs at issue were purely commercial in nature. *Id.* at 600. Concluding that the signs were commercial, the Ninth Circuit concluded the ordinances were regulation of commercial speech subject to intermediate scrutiny. *Id.* at 601. In *Contest Promotions*, the Ninth Circuit dismissed the applicability of *Reed*, citing to an earlier post-*Reed* Ninth Circuit opinion in which the Ninth

---

[1] Another case from California similarly relies on Justice Alito's concurrence in concluding that certain regulations do not violate *Reed*. *See ArchitectureArt, LLC v. City of San Diego,* 231 F. Supp.3d 828, 329 (S.D. Cal. 2017)("As discussed in the concurring opinion, this [on-premise/off-premise] distinction is not content based and, therefore, is still permissible.")

Circuit had concluded that commercial speech is subject only to intermediate scrutiny. *Id.* (citing *Lone Star Security and Video, Inc. v. City of Los Angeles*).

24. In *Lone Star Security and Video*, the issue of the standard that applies to commercial speech was addressed in a mere footnote in which the Ninth Circuit acknowledged that laws that restrict commercial speech *are* content based but decided, with no discussion, to apply intermediate scrutiny. *See Lone Star Security and Video,* 827 F.3d at n.3 ("But, although laws that restrict only commercial speech are content based, see [*Reed*], such restrictions need only withstand intermediate scrutiny. *See Central Hudson...*").

25. In short, the Ninth Circuit did no substantive analysis of *Reed* in *Lone Star Security and Video* and then relied on *Lone Star Security and Video* in deciding *Contest Promotions*. Given the clearly articulated and unqualified standard stated in *Reed*, the California courts' attempts to limit *Reed* with little to no analysis should be rejected.

**C.** ***Reed* should be applied to commercial, as well as non-commercial, speech.**

26. The United States Supreme Court did not limit its opinion in *Reed* solely to non-commercial speech. As discussed in paragraph 10 above, *Reed* said broadly that regulation is content based if the regulation "on its face" draws distinctions based on the message. *Reed*, 135 S.Ct. at 2227.

27. In the Tennessee opinion referenced in paragraph 14 above, the court considered regulations of both commercial and non-commercial speech that banned "some forms of both on the basis of content" and concluded the regulations did not survive First Amendment scrutiny.[2] *Thomas*, 248 F.Supp.3d at 872. In reaching its conclusions, the Tennessee Court specifically

---

[2] The facts of the Tennessee case were not the same as those in this case. Specifically, the language at issue in that case was agreed to be non-commercial speech, and the court, for that reason, applied the strict scrutiny standard. *Thomas*, 248 F.Supp.3d at 880.

refuted the notion that all on-premises/off-premises distinctions are content neutral based upon Justice Alito's concurring opinion in *Reed*. As discussed above, the Tennessee Court recognized that sometimes an on-premises/off-premises distinction can be content neutral. However, in *Thomas,* given that the state had to look at the content of the sign to determine whether it was an on-premises or off-premises sign, the court determined the regulations were content-based. *Thomas*, 248 F.Supp.3d at 879.

28. The Third Court of Appeals in Texas, applying the content neutrality analysis articulated in *Reed* as a first step, similarly found the Texas Highway Beautification Act's regulations of outdoor advertising to be unconstitutional, facially content-based regulations. *Auspro Enterprises, LP v. Texas Dep't of Transp.*, 506 S.W.3d 688 (Tex. App.—Austin 2016), *review granted, judgment vacated* (April 6, 2018). The *Auspro* case stemmed from prohibitions applicable to political signs, and, by language, the court limited its decision to regulation of noncommercial speech. *Auspro*, 506 S.W.3d at 703. However, the court in *Auspro* recognized that the provisions at issue applied to both commercial and noncommercial speech. Specifically, the court said:

> While we have acknowledged that *Reed's* holding seems to affect only restrictions of non-commercial speech, the plain language of the Texas [Highway Beautification] Act defines "outdoor advertising" so broadly that the Act's restrictions on speech apply to both commercial and non-commercial speech.

*Auspro*, 506 S.W.3d at 706. The court ultimately broadly struck Subchapter B (Regulation of Outdoor Advertising Generally) and Subchapter C (License and Permit for Advertising) of Chapter 391 of the Texas Transportation Code. *Id*. at 707.

**D. The City's regulations are content based, and strict scrutiny should apply.**

29. Here, as in *Reed*, *Thomas*, and *Auspro*, the regulations in the Sign Code require the City to look at the content of the sign to determine whether it is an on-premise or off-premise

sign.

30. An "off-premise sign" is defined as "a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed, or that directs persons to any location not on that site." Exhibit 1, Sign Code, Section 25-10-3(11).[3] Off-premise signs are prohibited, unless they are determined to be non-conforming signs. Exhibit 1, Sign Code, Section 25-10-102(1). A "nonconforming sign" is "a sign that was lawfully installed at its current location, but does not comply with the requirements of this chapter." Exhibit 1, Sign Code, Section 25-10-3(10). In other words, non-conforming signs are grandfathered signs. In the City, legal billboards are those off-premise signs that are grandfathered signs. No new billboards are permitted.

31. Additionally, on-premise signs and off-premise signs are treated differently under the Sign Code. On-premise signs can be digital. Exhibit 1, Sign Code, Section 25-10-102(6) (permitting electronically controlled changeable copy signs). However, off-premise signs cannot, as changes in the method or technology used to convey a message on a nonconforming sign are disallowed. Exhibit 1, Sign Code, Section 25-10-152(B)(2)(b).

32. Under the Sign Code, given the definition of off-premise signs, to know whether a sign is an off-premise sign and what regulations apply, one has to read the sign.

33. The regulations in the Sign Code, therefore, are not content-neutral, and strict scrutiny should apply under *Reed*.

## IV. THE SIGN CODE DOES NOT WITHSTAND STRICT SCRUTINY.

34. To survive strict scrutiny, the City must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 1355 S.Ct. 2231

---

[3] The exhibit reference is to Exhibit 1 in the Joint Stipulation filed by the parties. The Joint Stipulation currently references COA 0097-0118. If that reference is not updated by the agreement of the parties, then the exhibit reference here should be construed to refer to Exhibit E to Plaintiff's live complaint.

(citing *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011)). The City will not be able to do so. The disparate treatment between on-premise and off-premise signs is based on the content of the signs themselves. Where a permissible on-premise sign would transform to an impermissible off-premise sign based solely on a change in its content, no compelling interest is being served, nor can the regulation be narrowly tailored to achieve that interest.

## V. PRAYER

35. *Reed* means what it says: a law that is content based on its face is subject to strict scrutiny. The City's ordinances as to billboards are content based on their face because the City – and anyone else who is interested in determining what regulations apply – has to read the signs to determine whether they are on-premise signs or off-premise signs. Strict scrutiny must apply. Because the Sign Code cannot withstand strict scrutiny, the regulations applicable to off-premise signs must be struck as unconstitutional.

Respectfully submitted,

*/s/ B. Russell Horton*
B. Russell Horton
State Bar No. 10014450
Taline Manassian
State Bar No. 24007596
GEORGE BROTHERS KINCAID & HORTON, L.L.P.
114 West 7th Street, Ste. 1100
Austin, Texas 78701
(512) 495-1400 *telephone*
(512) 499-0094 *facsimile*
rhorton@gbkh.com
tmanassian@gbkh.com

**ATTORNEYS FOR PLAINTIFF**
**REAGAN NATIONAL ADVERTISING**
**OF AUSTIN, INC.**

By: /s/ *J. Allen Smith*
J. Allen Smith
Texas Bar I.D. 18616900
amith@settlepou.com
Bradley E. McLain
Texas Bar I.D. 24041453
bmclain@settlepou.com
SETTLEPOU
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
(214) 520-3300
(214) 526-4145 (Facsimile)

**ATTORNEYS FOR INTERVENOR
LAMAR ADVANTAGE OUTDOOR
COMPANY, L.P.**

## CERTIFICATE OF SERVICE

I certify that on May 24, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send this document to the following CM/ECF participants:

H. Gray Laird
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767
Email: gray.laird@austintexas.gov

J. Allen Smith
Bradley E. McLain
SETTLEPOU
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
Email: asmith@settlepou.com
Email: bmclain@settlepou.com

*/s/ B. Russell Horton*
B. Russell Horton
