# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| REAGAN NATIONAL ADVERTISING OF AUSTIN INC, §<br>Plaintiff, § | § § § § | |
| v. | § § § | CIVIL ACTION NO. 1:17-cv-00673-RP |
| CITY OF AUSTIN<br>Defendant. | § § | |

## TRIAL BRIEF OF CITY OF AUSTIN

Pursuant to paragraph 4 of the Scheduling Order (Doc. 18), Defendant City of Austin files this trial brief.

## I. SUMMARY

Plaintiff Reagan National Advertising of Austin Inc. ("Reagan") and Intervenor Lamar Advantage Holding Company Inc. ("Lamar") contend that the City's Sign Code is an unconstitutional content-based regulation of speech. Reagan and Lamar argue that the City's Sign Code is subject to strict scrutiny based on the United States Supreme Court's decision in *Reed v. Town of Gilbert, Arizona,* 135 S. Ct. 2218 (2015), and therefore the City must prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

Contrary to the arguments of Reagan and Lamar, the Supreme Court's decision in *Reed* does not mandate a strict scrutiny analysis for the City's sign regulations at issue in this lawsuit which are regulations which address commercial signs and which distinguish between on-premises and off-premises signs. The sign regulation challenged in *Reed* applied only to temporary non-commercial signs, and the majority opinion in *Reed* did not discuss regulation of on-premises versus off-premises signs. The majority opinion in *Reed* also made no reference at all to commercial speech. The Court in *Reed* did not overrule existing U.S. Supreme Court decisions

which applied intermediate scrutiny rather than strict scrutiny to premises-based distinctions in the regulation of sign advertising. The distinction between on-premises and off-premises advertising is content neutral and is constitutional. As a result, the City's sign regulations are not an unconstitutional content-based regulation of speech.

II. **THE U.S. SUPREME COURT HAS LONG HELD THAT CITIES CAN MAKE DISTINCTIONS BETWEEN ON-PREMISES AND OFF-PREMISES SIGNS**

Long before its decision in *Reed,* the United States Supreme Court upheld ordinances that banned off-premises signs but allowed on-premises signs. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490 (1981). In *Metromedia,* the Court considered a city ordinance which banned off-premises signs with twelve exemptions but allowed on-premises signs. *Id.* The Court considered the effect of the ordinance on commercial and noncommercial speech, and noted that its cases "consistently distinguished between the constitutional protection afforded commercial as opposed to noncommercial speech…" *Id.* at 504-505. The Court stated that "[T]he city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business…than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere." *Id.* at 512. The Court concluded that the distinction between on-premises and off-premises is constitutional. *Id.*

The *Metromedia* decision was consistent with the Court's decision in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557 (1980) where the Court held that the Constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. In *Central Hudson,* the Court held that restrictions on commercial speech are subject to intermediate scrutiny by evaluating "(1) whether the commercial speech 'concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances

that interest, and (4) reaches no further than necessary to accomplish the given objective." *Central Hudson,* 447 U.S. at 563-66.

### III. *REED* DOES NOT ALTER THE FRAMEWORK FOR ANALYSIS OF A DISTINCTION BETWEEN ON-PREMISES AND OFF-PREMISES SIGNS

In *Reed v. Town of Gilbert,* 135 S. Ct. 2218 (2015), the Court applied strict scrutiny to strike down a municipal sign code that expressly singled out "Ideological Signs," "Political Signs," and "Temporary Directional Signs" for different time and size restrictions. *Reed,* 135 S. Ct. at 2224-2225. The Court held that the first step in the analysis is determining whether the law is content neutral on its face. *Id.* A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive or justification. *Id.* The Court held that a law "is content based if [it] applies to particular speech because of the **topic** discussed or the **idea** or the **message** expressed." *Id.* at 2227 (emphasis added).

#### A. Reagan's and Lamar's Misapplication of *Reed*

Reagan and Lamar interpret the content neutral analysis to mean "in essence, if a person must read the sign to determine whether the sign complies with the regulation, the regulation is not content neutral." (Trial Brief of Plaintiff and Intervenor, p. 6). This interpretation is not supported by the Court's opinion in *Reed*. First, the speech at issue in *Reed* only involved non-commercial speech, and the Court's opinion in *Reed* notably made no reference at all to commercial speech or to its decision in *Central Hudson*. Nor did the opinion in *Reed* hold that the long-upheld distinction between on-premises and off-premises advertising was invalid. The *Reed* opinion did not question the validity of its decision in *Metromedia* which held that the distinction between on-premises and off-premises advertising is content neutral and is thus presumptively constitutional.

In *Reed,* the Court held that only content-based restrictions are subject to strict scrutiny,

and laws that are content neutral are instead subject to lesser scrutiny. *Id.* at 2232. Under *Reed's* terms, a speech regulation is content based if it singles out specific subject matter for differential treatment based on the topic discussed or the idea or message expressed. *Id.* at 2223. A distinction between on-premises and off-premises signs does not single out specific subject matter for different treatment, but instead is concerned with the location of the sign. *See Contest Promotions, LLC v. City and Cty of S.F.,* 874 F. 3d 597, 601 (9th Cir. 2017).

This analysis is supported by Justice Alito's concurrence in *Reed*. There, Justice Alito affirmed that rules that distinguish between on-premises and off-premises signs are content neutral under the framework developed by Justice Thomas's majority opinion. *Reed,* 135 S. Ct. at 2233. Justice Alito specifically included regulations that distinguish between on-premises and off-premises signs among a list of rules that would not be content-based. *Id.* Notably, Justices Kennedy and Sotomayor, who both joined the majority opinion, also joined Justice Alito's concurring opinion which further supports a conclusion that the on-premises/off-premises distinction was not called into question by *Reed's* analysis for determining whether a regulation is content based. Thus, three of the justices who joined the majority opinion in *Reed* concur with the view that on-premises/off-premises distinctions are not content-based and do not require strict scrutiny.

### B.  Post-*Reed,* most courts have rejected strict scrutiny for on-premises/off-premises distinctions.

Since *Reed,* most courts which have considered sign regulations containing the on-premises/off-premises distinction have held that *Reed* does not mandate a strict scrutiny analysis. *Contest Promotions, LLC v. City and Cty of S.F.,* 874 F. 3d 597, 601 (9th Cir. 2017); s*ee also Lone Star Sec. & Video, Inc. v. City of Los Angeles,* 827 F.3d 1192, 1198 n. 3 (9th Cir. 2016); *ArchitectureArt, LLC v. City of San Diego,* 231 F.Supp3d 828, 839 (S.D. Cal. 2017); *Cal. Outdoor*

*Equity Partners v. City of Corona,* No. 15-cv-3172, 2015 WL 4163346 at *9 (C. D. Cal. July 9, 2015); *Citizens for Free Speech, LLC v. Cty of Alameda,* 114 F.Supp.3d 952, 969 (N. D. Cal. 2015); *International Outdoor, Inc. v. City of Troy,* 2017 WL 2831702 at *4-5 (E. D. Mich. 2017).

Reagan and Lamar cite two cases in support of their argument that *Reed* requires a strict scrutiny analysis for commercial speech as well as non-commercial speech. Both are distinguishable from this case. In *Thomas v. Schroer,* 248 F.Supp.3d 868, 873 (W.D. Tenn. 2017), the court found that on-premises/off-premises distinctions in sign regulations may be either content neutral or content-based depending on the content of the sign. However, the language of the sign regulation in *Thomas* was clearly non-commercial speech and thus the court applied a strict scrutiny analysis. *Id.*

Similarly, in *Auspro Enterprises, LP v. Texas Dep't of Transp.,* 506 S.W.3d 688 (Tex. App.—Austin 2016), where the Third Court of Appeals in Texas held that the Texas Highway Beautification Act's outdoor-advertising regulations were unconstitutional content-based regulations of noncommercial speech, the court limited its decision to regulations of non-commercial speech. Notably, the court in *Auspro* acknowledged that "*Reed's* holding seems to affect only restrictions of non-commercial speech." *Auspro,* 506 S.W.3d at 706.

C. **The City's sign regulations are content neutral and intermediate scrutiny applies.**

The City's regulations in its Sign Code at issue in this case do not distinguish between signs based on the topic, idea or viewpoint expressed in the content of the signs. Instead, they regulate the locations of the signs and only distinguish between the locations of the signs relative to the locations of the products which the signs advertise. The regulations do not ban or otherwise curtail discussion of any specific topics, ideas or viewpoints, and thus are content neutral. Accordingly, consistent with the Supreme Court's decisions not only in *Central Hudson* and

*Metromedia,* but also *Reed,* the regulations should be analyzed under an intermediate scrutiny framework.

**D. The City's sign regulations withstand intermediate scrutiny.**

The stated purpose of the City's Sign Code, including the specific regulations at issue in this lawsuit, is to protect the aesthetic value of the City and to protect public safety. Both of these justifications for a city's sign regulations making a distinction between on-premises and off-premises signs were evaluated by the Supreme Court in *Metromedia* using the intermediate scrutiny framework set forth in *Central Hudson*. As set forth in *Central Hudson,* the Court's evaluation in determining the validity of a restriction on commercial speech considers (1) whether the commercial speech "concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." *Central Hudson,* 447 U.S. at 563-66.

In *Metromedia,* the Supreme Court stated that it could not disagree with the "accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. *Metromedia,* 101 S. Ct. at 2893. The Court also stated that it is not speculative to recognize that billboards by their very nature can be perceived as aesthetic harm. *Id.* at 2893-2894. Moreover, the Court held that it could not reject the city's judgment to value one kind of commercial speech—onsite advertising—more than another kind of commercial speech—offsite advertising. As a result, the Court held that offsite commercial billboards may be prohibited while onsite commercial billboards are permitted. *Id.* at 2895. For the same reasons, the City of Austin's sign regulations at issue in this lawsuit also pass intermediate scrutiny.

## IV. CONCLUSION

The Supreme Court's decision in *Reed* does not mandate a strict scrutiny analysis for the City's sign regulations. The fact that the regulations distinguish between on-premises and off-premises signs does not render the regulations content-based and subject the regulations to strict scrutiny. Supreme Court precedent treats sign regulations containing such distinctions as content-neutral regulations of speech and upholds these regulations under intermediate scrutiny. As a result, the City's sign regulations are not an unconstitutional content-based regulation of speech.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, LITIGATION DIVISION CHIEF

/s/ H. Gray Laird III
H. GRAY LAIRD III
State Bar No. 24087054
City of Austin
P. O. Box 1546
Austin, Texas 78767-1546
gray.laird@austintexas.gov
Telephone (512) 974-1342
Facsimile (512) 974-1311

**ATTORNEYS FOR DEFENDANT**

# CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing on all parties or their attorneys of record, in compliance with the Federal Rules of Civil Procedure, this the 7th day of June, 2018.

**Via CM/ECF to:**
B. Russell Horton
State Bar No. 10014450
rhorton@gbkh.com
Taline Manassian
State Bar No. 24007596
tmanassian@gbkh.com
GEORGE BROTHERS KINCAID & HORTON, L.L.P.
114 West 7th Street, Suite 1100
Austin, Texas 78701
Telephone: (512) 495-1400
Facsimile: (512) 499-0094

**ATTORNEYS FOR PLAINTIFF**

J. Allen Smith
State Bar No. 18616900
asmith@settlepou.com
Bradley E. McLain
State Bar No. 24041453
bmclain@settlepou.com
SETTLEPOU
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
Telephone: (214) 520-3300
Facsimile: (214) 526-4145

**ATTORNEYS FOR INTERVENOR,
LAMAR ADVANTAGE HOLDING COMPANY, L.P.**

/s/   H. Gray Laird III
H. GRAY LAIRD III