IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REAGAN NATIONAL ADVERTISING OF AUSTIN, INC., and LAMAR ADVANTAGE HOLDING COMPANY, | § § § § § § | |
| Plaintiffs, | § § | 1:17-CV-673-RP |
| v. | § § § | |
| CITY OF AUSTIN, | § § | |
| Defendant. | § § § § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

By ordinance, the City of Austin prohibits new digital signs for off-premises signs, but

permits them for on-premises signs. The plaintiffs own and operate billboards. They contend that

the City's different rules for on- and off-premises signs is an unconstitutional restriction of speech

under the First Amendment.

At the parties' request, the Court held a bench trial on this question on June 26, 2018. The

parties submitted pretrial briefing, (Pls.' Br., Dkt. 25; City Br., Dkt. 30; Pls.' Resp., Dkt. 34), joint

stipulated facts, (Dkt. 26), and proposed findings and fact and conclusions of law, (Dkts. 27, 29).

Both parties then submitted post-trial briefing. (Dkts. 37, 38, 40, 42). Having considered parties'

submissions, the evidence and argument at trial, and the applicable law, the Court now enters the

following findings of fact and conclusions of law.[1]

_____

[1] Any finding of fact that should be construed as a conclusion of law is so adopted. Any conclusion of law
that should be construed as a finding of fact is so adopted.

# I. BACKGROUND

Plaintiff Reagan National Advertising of Austin, Inc. ("Reagan") filed 50 permit applications to install digital sign-faces on billboards throughout the Austin area. (Am. Stip. Facts, Dkt. 26, at 3). Defendant City of Austin ("the City") denied the applications, citing city code ("the Sign Code") that prohibits the installation of digital faces on "off-premise" signs. (*Id.*). Shortly after, Lamar Advantage Holding Company ("Lamar") filed 23 permit applications, which the City denied on same grounds. (Lamar Am. Compl., Dkt. 13).

Reagan filed suit in Travis County and the City removed to federal court. (Not. Removal, Dkt. 1). Lamar joined the case as an intervenor plaintiff. (Order on Mot. Intervene, Dkt. 9). Reagan and Lamar then filed amended complaints, which assert identical causes of action and requests for relief. (Reagan Am. Compl., Dkt. 19; Lamar Am. Compl., Dkt. 13). Reagan and Lamar assert their claims based on the Sign Code in effect at the time that the City denied their permit applications. (*See* Reagan Am. Compl., Dkt. 19, at 2; Lamar Am. Compl., Dkt. 13, at 2).The City revised Chapter 25-10 on August 17, 2017, after all of Plaintiffs' applications were denied. (*See* Ord. No. 20170817-072, Dkt. 37-20).

Reagan and Lamar assert that the distinction between on- and off-premises signs in the Austin Sign Code is an unconstitutional content-based restriction of speech, both facially and as applied to Reagan and Lamar. (Reagan Am. Compl., Dkt. 19, at 7; Lamar Am. Compl., Dkt. 13, at 5). They seek a declaratory judgment that Chapter 25-10, or any relevant part of that chapter, is an unconstitutional content-based regulation of speech; that it is invalid and unenforceable on its face; that it is invalid as applied to Regan and Lamar; and that Reagan and Lamar are "allowed to convert [their] outdoor advertising signs to digital copy without having permits issued." (*Id.* (citing Tex. Civ. Prac. & Rem. Code §§ 37.003, 37.004)).

## II. FINDINGS OF FACT

### A. Stipulated Facts

The parties stipulated to the following facts, which are not contradicted anywhere in the record. (Am. Stip. Facts, Dkt. 26). Although the parties submitted separate proposed findings of fact that feature slightly different wording, (*see* Dkts. 27, 29), they are identical in substance. The Court therefore adopts the Joint Proposed Amended Stipulated Facts as its own findings.[2]

Plaintiffs Reagan and Lamar are companies in the business of outdoor advertising, which includes ownership and operation of billboards throughout the City of Austin and surrounding area. (Am. Stip. Facts, Dkt. 26, ¶¶ 2–3, 6).

Chapter 25-10 of the Austin Sign Code distinguishes between "on-premise" signs and "off-premise" signs. Under the Sign Code in effect at the time of Plaintiffs' applications, a sign is an "off-premise" sign if it advertises something not located where the sign is installed or directs people to any location other than the site of the sign itself. Section 25-10-3(11) (current version at Section 25-10-4(9)). Billboards are off-premises signs. (Am. Stip. Facts, Dkt. 26, ¶ 9). The Sign Code allows construction of new on-premises signs but prohibits new off-premises signs. (*Id.* ¶ 10). Existing off-premises signs are deemed "nonconforming signs," which were lawful when installed but no longer comply with the current Sign Code. (*Id.* ¶¶ 10–11); *see* Section 25-10-3(10). The Sign Code prohibits changes to "non-conforming signs," including existing off-premises signs. (*Id.* ¶ 10).

The Sign Code allows digital sign-faces for on-premises signs but prohibits digital sign-faces for off-premises signs. (*Id.* ¶ 12); *see* Section 25-10-102(6) (allowing electronically controlled changeable copy signs for on-premises signs); Section 25-10-152(B)(2)(b) (prohibiting any "change in the method of technology used to convey a message" on a non-conforming sign).

---

[2] Unless specified otherwise, all references to the Sign Code pertain to the version of the Sign Code in effect at the time that Reagan and Lamar applied for their permits, which is offered as Joint Exhibit J-1. (*See* Sign Code, Dkt. 19-5).

The City's stated general purpose in adopting the Sign Code, including the sign regulations at issue in this lawsuit, is to protect the aesthetic value of the city and to protect public safety. (*Id.* ¶ 13).

On April 17, 2017, Reagan submitted 50 permit applications to install digital sign-faces on existing sign structures. (*Id.* ¶ 14). The next month, the City of Austin denied all 50 of Reagan's applications. (*Id.* ¶ 16). Reagan then submitted another 11 permit applications to install digital sign-faces on existing sign structures in June. (*Id.* ¶ 17). In July, the City of Austin once again denied all 11 of Reagan's applications. (*Id.* ¶ 18). In the denial letters, the City stated that "[t]hese applications cannot be approved under Section 25-10-152 (*Nonconforming Signs)* because they would change the existing technology used to convey off-premise commercial messages and increase the degree of nonconformity with current regulations relating to off-premise signs." (First Regan Denial Letter, Dkt. 36-2, at 1 ("Ex. J-4"); Second Reagan Denial Letter, Dkt. 36-3, at 68 ("Ex. J-7")).

On June 29, 2017, Lamar submitted 23 permit applications to install digital sign-faces on existing sign structures. (Am. Stip. Facts, Dkt. 26, ¶ 21). In August, the City of Austin denied all of Lamar's applications. (*Id.* ¶ 22). In its denial letter to Lamar, the City stated that "[t]hese applications cannot be approved under Section 25-10-152 . . . [and] the longstanding prohibition codified in Section 25-10-102 (*Signs Prohibited in All Sign Districts*)," which prohibits off-premises signs that are not authorized under any other provision of the Sign Code. (Lamar Denial Letter, Dkt. 36-4, at 68 ("Ex. J-9")). Reagan and Lamar have submitted into evidence a complete list of the subject properties for which the City denied permits to install digital sign-faces. (Ex. A, Dkt. 26-1; Ex. B, Dkt. 26-2).

The parties also stipulate that the City amended Chapter 25-10 on August 17, 2017, after the City denied all of Reagan and Lamar's permit applications. (Am. Stip. Facts, Dkt. 26, ¶ 27; *see* Ordinance No. 20170817-072, Dkt. 36-11, at 4–20; Section 25-10 (as amended 2017), Dkt. 36-12, at 1–33).

## B. Additional Findings of Fact

The Court also finds the following additional facts, which were undisputed and submitted during and after the bench trial. First, the amendments to the City Code did not alter Section 25-10-152, which prohibits new digital sign-faces for billboards. Section 25-10-152(B)(2)(b) (current version at Section 25-10-152(B)(2)(b)(2017)).[3] However, the amendments did change the definition of an "off-premise" sign. The old Sign Code in effect at the time of Reagan and Lamar's applications provides that an off-premises sign is "a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed, or that directs persons to any location not on that site." Section 25-10-3(11) (current version at Section 25-10-4(9)(2017)). The new Sign Code provides that an off-premises sign is "a sign that displays any message directing attention to a business . . . activity, events, person, institution, or other commercial message which is generally conducted . . . or occurs elsewhere than on the premises where the sign is located . . ." Section 25-10-4(9) (2017).

## III. CONCLUSIONS OF LAW

Reagan and Lamar argue that the distinction between on-premises and off-premises signs in the Austin Sign Code is an unconstitutional content-based restriction of speech because it "treats on-premise and off-premise signs differently and defines them in such a way that requires one to read the sign to determine which kind of sign it is and what ordinances apply." (Pls.' Br., Dkt. 25, at 2).[4] They contend that "[i]f the Sign Code must be read to determine what ordinances apply," it is not content-neutral and therefore subject to strict scrutiny. (*Id.*).

---

[3] (*See also* City Post-Trial Br., Dkt. 37, at 2). Reagan and Lamar did not dispute this fact in their response, (*see* Pls.' Resp., Dkt. 42), and the text of the two versions of the Sign Code are identical.

[4] In their respective Complaints and joint trial brief, Reagan and Lamar specifically identify the following provisions: Section 25-10-3 (defining a non-conforming sign); Section 25-10-3(11) (defining an off-site sign); Section 25-10-102(6) (allowing electronically controlled changeable copy signs only for on-premises signs), Section 25-10-152(B)(2)(b) (prohibiting any "change in the method of technology used to convey a message"

Before reaching the merits of Reagan and Lamar's claim, the Court must consider two preliminary questions. Now that the City has amended parts of the Sign Code, is this lawsuit moot? And if their claim is otherwise moot, do Plaintiffs have a vested right to have their applications considered under the Sign Code in effect at the time that they applied?

## A. Mootness

*Sua sponte*, the Court recognized and raised the possibility of mootness during the bench trial. The parties submitted argument at trial and post-trial briefing on this question. (Dkts. 37, 38, 40, 41, 42).[5]

If a court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The trial court is "free to weigh the evidence and satisfy itself" that subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *Murphy v.*

---

on a non-conforming sign). (*See* Reagan Am. Compl., Dkt. 19, at 3; Lamar Am. Compl., Dkt. 13, at 3; Pls.' Br., Dkt. 25, at 11).

[5] The Court also notes the parties' submissions on the related case, *Reagan National Advertising of Austin, Inc. v. City of Cedar Park,* No. 1:17-CV-717-SS (W.D. Tex. filed July 31, 2017) ("the Cedar Park case"). In that case, the Court granted summary judgment in favor of Cedar Park, (*id.*, Dkt. 37), but then vacated that judgment because Court's ruling rested on the conclusion that Reagan lacked standing to challenge the Sign Code's regulation of noncommercial speech, but the Court had not given Reagan notice and opportunity to respond to the issue of standing, (*id.*, Dkt. 42). The Court will issue a revised summary judgment order taking into account the additional evidence that Reagan does publish some noncommercial speech. (*Id.*). In this case, plaintiffs have already submitted evidence that they publish some noncommercial speech. (*See* Ex. J-10, Dkt. 36-4). The Court does not require any further briefing or evidence on this issue.

*Hunt*, 455 U.S. 478, 481 (1982)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). "[T]he fact that a challenged law is amended does not alone moot the underlying claim unless the law has been sufficiently altered so as to present a substantially different controversy." *Perez v. Texas*, 970 F. Supp. 2d 593, 602 (W.D. Tex. 2013) (citing *Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993)).

In this case, the 2017 amendments to the Sign Code change the definition of an "off-premise" sign, potentially but not necessarily altering the types of signs that will be covered as off-premises. For example, the old Sign Code in effect at the time of Reagan and Lamar's applications defines an off-premises sign as "a sign *advertising* a business, person, activity, goods, products, or service . . . ," while the new definition is "a sign *that displays any message* directing attention to a business . . . activity, events, person, institution, *or other commercial message.*" Section 25-10-3(11) (current version at Section 25-10-4(9)(2017)). However, the amendments do not alter the prohibition against new digital sign-faces for billboards. *See* Section 25-10-152(B)(2)(b) (current version at Section 25-10-152(B)(2)(b)(2017)). Moreover, the amendments do not change Reagan and Lamar's claim in this suit: that if a person must read a sign to determine which regulation applies— the on-premises provision or the off-premises provision—then that the regulation is content-based and subject to strict scrutiny. (Reagan Am. Compl., Dkt. 19, at 4-5; *see also* Lamar Am. Compl., Dkt. 13, at 3 ("The only way to determine whether a sign is an on-premise or off-premise sign is to consider the content of the sign and determine whether that content is sufficiently related to the business or service offered on the sign site.")). This is the sole basis of their challenge to the Sign Code. Because the amendments do not change the question before the Court, the Sign Code has not

7

been "sufficiently altered so as to present a substantially different controversy." *See Perez*, 970 F. Supp. 2d at 602 (citing *Ne. Fla. Chapter*, 508 U.S. at 662 & n.3). Reagan and Lamar's claims are not moot. The Court therefore does not reach the question of whether Reagan and Lamar have vested rights in the consideration of their applications under the Sign Code in effect at the time that they applied.

## B.  The Merits

The Court now turns to the central question in this case. Reagan and Lamar ask the Court to find that the on/off premises distinction in the Sign Code in effect at the time that the City denied their permits is an unconstitutional content-based restriction of speech, facially and as applied to them. Specifically, they contend that *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) "altered the analysis" for regulations that distinguish between on- and off-premises signs. (Pls.' Br., Dkt. 25, at 3). Reagan and Lamar argue that under *Reed*, the Sign Code's different rules for on- and off-premises signs are content-based and therefore subject to strict scrutiny. (*Id.*). The City counters that the on/off-premises distinction only regulates the location of signs, not their content, and that *Reed* did not address the standard for on/off-premises distinctions at all. (City Br., Dkt. 30, at 4).

### 1.  Standard of Review

The parties agree that before *Reed*, regulations distinguishing between on- and off-premises signs were subject to intermediate scrutiny, not strict scrutiny. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981). The Court considers *Metromedia* and *Reed* in turn.

### a.  The Decision in Metromedia

In *Metromedia*, the city of San Diego prohibited off-premises "outdoor advertising display signs," with exceptions for twelve specific sign categories, such as bus stop signs, "religious symbols," and temporary political campaign signs. *Id.* at 502. In effect, San Diego prohibited all off-premises commercial signs but allowed on-premises commercial signs. *Id.* at 503. For non-

commercial signs, San Diego prohibited all signs other than the twelve excepted categories. *Id.*

Regarding the commercial sign regulations, the Supreme Court applied intermediate scrutiny: "(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." *Id.* at 507 (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, at 563–66 (1980)). Applying that intermediate scrutiny test, the Supreme Court upheld different rules for on-premises and off-premises commercial signs: "offsite commercial billboards may be prohibited while onsite commercial billboards are permitted." *Id.* at 512.[6] However, the Court added: "[i]nsofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." *Id.* at 513.[7] As the Fifth Circuit has summarized: "*Metromedia* established three key propositions. It held that (1) a billboard ordinance may permit on-premise commercial advertisement while banning off-premise commercial advertisement; (2) the ordinance may not

---

[6] The Court explained: "There can be little controversy over the application of the first, second, and fourth criteria. There is no suggestion that the commercial advertising at issue here involves unlawful activity or is misleading. Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals. . . . If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs." *Metromedia*, 453 U.S. at 507–08 (internal citations and quotation marks omitted). Regarding the third criterion—whether the regulation "directly advances" governmental interests in traffic safety and the city's aesthetic appearance—the Court deferred to the subjective judgment of local lawmakers in the absence of any claim that San Diego had "as an ulterior motive the suppression of speech." *Id.* at 510.

[7] *Metromedia* concluded that the San Diego regulations were unconstitutional because they "favor[ed] certain kinds of messages—such as onsite commercial advertising, and temporary political campaign advertisements—over others," based on their content, with a complete bar on most non-commercial signs. *Metromedia*, 435 U.S. at 519.

distinguish among non-commercial messages on the basis of their content; and (3) where a city permits commercial billboards, it must also permit non-commercial ones." *RTM Media, LLC v. City of Houston*, 584 F.3d 220, 225 (5th Cir. 2009).

### b. The Decision in Reed

The City of Austin contends that *Metromedia* continues to apply. (City Br., Dkt. 30, at 5–6). Reagan and Lamar argue that *Reed* "change[d] the landscape applicable to the on-premise/off-premise distinction and specifically requires strict scrutiny to apply where ordinances are not content-neutral." (Pls.' Br., Dkt. 25, at 3).

Reagan and Lamar are only correct in part. *Reed* did state that strict scrutiny applies to content-based speech regulations, and that courts must consider whether a facially neutral regulation is nonetheless content-based based on the law's "purpose and justification." *Reed*, 135 S. Ct. at 2227–28. But *Reed* did not change the First Amendment analysis for on/off premises distinctions.

First, *Reed* did not change the test for content-based speech. Rather, *Reed* recites the familiar standard. Under the First Amendment, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* at 2226 (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) and *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991)). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 564 (2011) (holding that a regulation permitting "educational communications" but restricting disclosure for marketing purposes was content-based "on its face"); *Carey v. Brown*, 447 U.S. 455, 462 (1980) (holding that a regulation distinguishing

between peaceful labor picketing and other peaceful picketing was content-based); *Mosley*, 408 U.S. at 95 (same)).

*Reed* affirmed that the phrase "content based" has a "commonsense meaning" that "requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (citing *Sorrell*, 564 U.S. at 565). While "[s]ome facial distinctions based on a message are obvious, defining regulated speech by particular subject matter . . . others are more subtle, defining regulated speech by its function or purpose." *Id.* Finally, some laws that are "facially content neutral" are nonetheless content based if they "cannot be justified without reference to the content of the regulated speech," or if the government adopted them "because of disagreement with the message the speech conveys." *Id.* (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (cleaned up). All content-based speech regulations are subject to strict scrutiny. *Id.*

In *Reed*, the Supreme Court applied this framework to the sign code in Gilbert, Arizona, which prohibited the display of outdoor signs anywhere without a permit, with special exemptions for 23 categories of signs. *Id.* at 2224. Exempt sign categories included "Ideological Signs," "Political Signs," and "Temporary Directional Signs Relating to a Qualifying Event." *Id.* Each category was subject to different regulations for size, location, and duration of display. The Gilbert sign code treated ideological signs "most favorably," allowing them the largest display size, permission to be placed in all zoning areas, and unlimited display time. *Id.* When a local church posted signs for Sunday services beyond the time limit for "Temporary Directional Signs Relating to a Qualifying Event," town officials issued repeated citations, and the church filed suit. *Id.* at 2225–26.

*Reed* emphasized that "[b]ecause strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Id.* at 2228. "[A] speech regulation targeted at specific subject matter is content based even

11

if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230. Thus, although the Gilbert sign code did not discriminate, for example, between different political viewpoints subject to the "Political Signs" category, the sign code did "single out specific subject matter for differential treatment" by adopting different regulations for political messages, ideological messages, and messages about events. *See id.* ("Ideological messages are given more favorable treatment than messages concerning a political candidate, which are themselves given more favorable treatment than messages announcing an assembly of like-minded individuals. That is a paradigmatic example of content-based discrimination."). Applying strict scrutiny, the *Reed* Court concluded that the Gilbert sign code was not narrowly tailored to achieve a compelling interest. *Id.* at 2231 (citing *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)).

Here, Reagan and Lamar argue that if a viewer must "read the sign . . . just to determine what rules apply, then the regulation is content based under *Reed.*" (Pls.' Post-Trial Br., Dkt. 38, at 1). They submit that the City of Austin Sign Code is content based because the regulations "require the City to look at the content of the sign to determine whether it is an on-premise or off-premise sign," to see if digital sign-faces are permitted. (Pls.' Br., Dkt. 25, at 10–11). They argue that "the location of the structure itself is not what determines what rules apply. Rather, the content of the sign determines what rules apply." (Pls.' Post-Trial Br., Dkt. 38, at 2). "Does the content advertise something at that location? If so, then the on-premise rules apply. Does th[e] content advertise something not at that location? If so, then the off-premise rules apply." (*Id.*).

Reagan and Lamar are urging an interpretation of *Reed* that no court in this circuit has adopted.[8] On their reading, regulations governing stop signs are content based because they must be

---

[8] Courts in our circuit have not yet ruled on this question. Reagan and Lamar offer one supporting authority, which is not binding on this Court. *See Thomas v. Schroer,* 248 F. Supp. 3d 868, 880 (W.D. Tenn. 2017), *reconsideration denied,* No. 13-CV-02987-JPM-CGC, 2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017) ("Even though the on-premises/off-premises distinction appears facially content neutral, it ultimately cannot be justified without reference to the content of the regulated speech and thus is a content-based regulation.")

read to determine its governing provision under the Sign Code. On this view, regulations imposing

greater restrictions for commercial signs—a well-established and constitutional practice[9]—would be

content-based because a viewer must read a sign to determine if the message was commercial or

non-commercial. In effect, Reagan and Lamar urge a rule that would apply strict scrutiny to all

regulations for signs with written text.

This Court declines to find that *Reed* quietly overruled *Metromedia* and *Central Hudson* without

saying so. In fact, *Reed* does not mention *Metromedia* at all. *Reed* is entirely consistent with *Metromedia*.

In *Reed*, the Supreme Court struck down a regulation that compelled town officials to categorize the

content of a sign—for example, as "Ideological" or "Political"—in order to apply different rules for

different subject matter. *Reed*, 135 S. Ct. at 2230. In *Metromedia*, the Supreme Court upheld the

portion of the regulations that restricted off-premises billboards while permitting them on-premises,

so long as the city did not restrict noncommercial subject matter more than commercial subject

matter. *Metromedia*, 453 U.S. at 512–13.

Finally, the only mention of on- or off-premises signs in *Reed* appears in Justice Alito's

concurrence, which states that the rules for on/off-premises distinctions would remain unchanged

after *Reed*: "I will not attempt to provide anything like a comprehensive list, but here are some rules

---

(cleaned up). Moreover, as the City notes, *Thomas* case concerned regulations that only restricted non-commercial speech. (City Trial Br., Dkt. 30, at 5). Outside of the Fifth Circuit, an overwhelming majority of courts have rejected the construction of *Reed* that Reagan and Lamar propose. *See Act Now to Stop War and End Racism Coal. and Muslim Am. Soc'y Freedom Found. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017), *cert. denied sub nom., Muslim Am. Soc'y Freedom Found*, 138 S. Ct. 334 (2017) ("cursory examination" does not render the statute facially content based); *Contest Promotions, LLC v. City & Cty. of San Francisco*, 874 F.3d 597, 601 (9th Cir. 2017) ("We have likewise rejected the notion that *Reed* altered *Central Hudson*'s longstanding intermediate scrutiny framework [for commercial speech].") (citing *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016); *Signs for Jesus v. Town of Pembroke*, 230 F. Supp. 3d 49, 60 (D.N.H. 2017) (holding that absent evidence "suggesting that the Town applied the electronic sign ordinance unevenly in a way that suggests a content preference," restrictions on electronic signs were content-neutral and subject to intermediate scrutiny).

[9] "[W]e continue to observe the distinction between commercial and noncommercial speech, indicating that the former could be forbidden and regulated in situations where the latter could not be." *Metromedia*, 453 U.S. at 506 (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 379–381, 383–384 (1977); *Ohralik v. Ohio State Bar Ass'n.*, 436 U.S. 447, 456 (1978)).

that would not be content based: . . . Rules distinguishing between on-premises and off-premises signs." *Reed*, 135 S. Ct. at 2233 (Alito, J., concurring). *Reed* did not overrule or alter the analysis for on- and off-premises signs under *Metromedia*.

## 2. The City of Austin Sign Code

The Court now considers the City of Austin Sign Code. As detailed above, an off-premises sign is "a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed, or that directs persons to any location not on that site." Section 25-10-3(11) (current version at Section 25-10-4(9) (2017)). The Sign Code allows digital sign-faces for on-premises signs but prohibits digital sign-faces for off-premises signs. *See* Section 25-10-102(6) (allowing electronically controlled changeable copy signs for on-premises signs); Section 25-10-152(B)(2)(b) (current version at Section 25-10-152(B)(2)(b)(2017) (prohibiting any "change in the method of technology used to convey a message" on a non-conforming sign).

*Reed* directs courts to evaluate whether a regulation is facially content based *and* whether the "purpose and justification for the law are content based" before a court may "conclude that the law is content neutral and thus subject to a lower level of scrutiny." 135 S. Ct. at 2228. First, a court must consider whether the law is content-neutral on its face. *Id.* Here, the Court agrees with the City that the Sign Code's on/off premises distinction is facially neutral because it "do[es] not ban or otherwise curtail discussion of any specific topics, ideas or viewpoints." (City Br., Dkt. 30, at 5). For example, the on/off premises distinction in the Sign Code does not impose greater restrictions for political messages, religious messages, or any other subject matter, as the impermissible regulation did in *Reed. See Reed*, 135 S. Ct. at 2230. The Sign Code does not require a viewer to evaluate the topic, idea, or viewpoint on the sign in order to determine which provision applies. It only requires a viewer to determine whether the subject matter is located on the same property as the sign, or on a

14

different property. This is a regulation based on location, not "based on the message a speaker conveys." *Id.* at 2227 (citing *Sorrell*, 564 U.S. at 565).

Second, the City's stated "purpose and justification" is to "protect the aesthetic value of the City and to protect public safety." (City Br., Dkt. 30, at 6). Applied without bias to different messages or speakers, community aesthetics and public safety are indeed content neutral grounds. There is no evidence in the record that the City of Austin has applied these grounds differently for different messages or speakers, or that these grounds are pretext for any other purpose. The Court concludes that the Sign Code's on/off premises distinction is content neutral both facially and in its purpose and justification.

Because the Sign Code's on/off-premises distinction is content-neutral, the Court applies the intermediate scrutiny standard for commercial speech restrictions from *Metromedia* and *Central Hudson*. Neither party disputes the first requirement: the regulated speech "concerns lawful activity and is not misleading." *See Metromedia*, 453 U.S. at 507 (citing *Central Hudson*, 447 U.S. at 563). For the second requirement, the City of Austin submits that the distinction for on/off-premises signs is intended to "protect the aesthetic value of the City and to protect public safety." (City Br., Dkt. 30, at 6). Reagan and Lamar argue that "no compelling interest is being served, nor can the regulation be narrowly tailored to achieve that interest." (Pls.' Br., Dkt. 25, at 12). But *Metromedia* directly contradicts Reagan and Lamar: "Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals." *Metromedia*, 453 U.S. at 507–08. On the third requirement, that a regulation must "directly advance" a government's substantial interest, the Supreme Court further stated that courts should "hesitate to disagree with the accumulated, common-sense judgments of local lawmakers . . . that billboards are real and substantial hazards to traffic safety." *Id.* at 509. "Such [a]esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason

15

must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." *Id.* at 510. And here, as in *Metromedia*, there is no claim that the City of Austin "has as an ulterior motive the suppression of speech." *Id.*[10] Finally, the fourth requirement mandates that the City's regulation "reaches no further than necessary to accomplish the given objective." *Id.* at 507. The facts in this case again parallel *Metromedia*: "The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite [billboards]. . . ." *Id.* at 508; *see also RTM Media*, 584 F.3d at 224 n.5. No further showing is required.

Finally, the Court notes that the Sign Code satisfies the corollary rules in *Metromedia* for non-commercial speech. An ordinance "may not distinguish among non-commercial messages on the basis of their content," and "where a city permits commercial billboards, it must also permit non-commercial ones." *RTM Media*, 584 F.3d at 225 (citing *Metromedia*, 453 U.S. at 513). Here, there is no evidence in the record that the Sign Code distinguished among non-commercial messages based on their content or that the City prohibited non-commercial billboards.[11]

The Court concludes that the distinction between on-premises and off-premises signs in the City of Austin Sign Code satisfies intermediate scrutiny.

## IV. CONCLUSION

For the reasons given herein, **IT IS ORDERED** that Reagan and Lamar's request for declaratory judgment that the City of Austin Sign Code is an unconstitutional content-based regulation of speech is **DENIED**.

---

[10] Reagan and Lamar assert in their post-trial briefing that the City's true purpose is to "reduce or eliminate billboards," (Pls. Post-Trial Br., Dkt. 38, a 7), but *Metromedia* expressly permits the reduction of billboards so long as the relevant regulations satisfy the requirements of the First Amendment. Further, there is no evidence before the Court that the City is in fact seeking to "eliminate" billboards.

[11] In fact, Reagan and Lamar provided exhibits with images of their own non-commercial billboards displayed in Austin, including signs promoting a ballot initiative, a non-profit children's advocacy organization, and a public art display. (*See* Ex. J-10, Dkt. 36-4).

**IT IS FURTHER ORDERED** that Reagan and Lamar's request for declaratory judgment that the City of Austin Sign Code is invalid and unenforceable is **DENIED**.

**IT IS FINALLY ORDERED** that Reagan and Lamar's request for declaratory judgment allowing them to install digital sign-faces without approved permits from the City is **DENIED**.

**SIGNED** on March 27, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE